IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville September 16, 2014

**STATE OF TENNESSEE v. CHARLES NEWSOM**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-I-1290    J. Randall Wyatt, Jr., Judge**

---

**No. M2014-00168-CCA-R3-CD - Filed October 10, 2014**

---

The Defendant, Charles Newsom, was convicted of aggravated burglary upon his best interest guilty plea.  *See* T.C.A. § 39-14-403 (2014).  As part of the plea agreement, he accepted a three-year, Range I sentence, with the question of judicial diversion and the manner of service to be determined by the trial court.  The trial court denied judicial diversion and imposed a split-confinement sentence of one year of confinement followed by two years of probation.  On appeal, he contends that the trial court erred in denying judicial diversion.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent, Assistant District Public Defender (on appeal); and Aisha McWeay, Assistant District Public Defender (at hearing), Nashville, Tennessee, for the appellant, Charles Newsom.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the guilty plea hearing, the prosecutor stated the following:

Had this case gone to trial the State's proof would have shown that on October 15, 2013 the victim Adria Sambor returned to her residence and found that the home had been burglarized via the bedroom window.  Caleb Rich also

lives at that location. Two Macbooks, an Ipad, a silver 120GB Ipod, and a PlayStation 3 with four controllers and eight games were stolen.

At about 4:45 a suspicious person call was dispatched at 1506 Fatherland. The caller said there were two male blacks, late teens, one with dreads wearing a white t-shirt and baggy blue jeans, the other with short hair wearing a red long sleeve shirt were looking into houses in the area. About five minutes later a theft call was dispatched at 207 South 13th Street. A neighbor called the police and said that there were two male blacks, one with dreads wearing a white t-shirt and the other with shorter hair and wearing a red long sleeve shirt had stolen a package from the porch of that location and that they were in the alley.

Officer Donegan responded and located the defendant and a juvenile codefendant at 1001 Shelby Avenue. The defendant had dreads and was wearing a white t-shirt and baggy blue jeans. The juvenile codefendant was wearing a red long sleeve shirt and had shorter hair. They were both positively identified by the witness. The defendant granted consent to search his person and Officer Donegan found the silver Ipod in his pants pocket that had Caleb Rich's name on the main screen.

The defendant said that he and the codefendant were in the area but denied stealing the package from 207 South 13th and denied burglarizing 1200 Shelby Avenue.

The presentence report was received as an exhibit at the sentencing hearing and reflected that the eighteen-year-old Defendant had neither completed high school nor obtained his high school equivalency. He reported that he had never used alcohol, narcotics, or unprescribed medications. He had Type I Diabetes that required insulin shots with every meal, and he took medication for a heart condition. He was declared physically disabled in 2001 and had never been employed.

Adria Sambor, one of the victims, testified that she found her door unlocked and her home ransacked when she returned from work on October 15, 2013. She found dirt, sticks, and mud throughout the house and a broken bedroom window, which she said was the point of entry. She felt scared, horrified, and violated. She listed several missing items: two laptop computers, a telephone, an iPad, speakers, two large hiking backpacks, a Play Station, games, and other unspecified items. She valued the stolen items at $4500 to $5000 and said that although the property was insured, she had a $500 deductible. She said personal photographs and other information that could not be replaced had been stored on some of the items. She

worried daily when she left home about someone burglarizing the house and being inside when she returned.

Ms. Sambor asked that the trial court give the Defendant the strictest punishment possible and that the sentence include confinement. She said that she and her boyfriend had agreed previously to a bond reduction from $35,000 to $3500 for the Defendant in exchange for his consent and plea to a criminal information and that they agreed because they understood the conviction "would go on his permanent record."

The prosecutor stated that Ms. Sambor's boyfriend, Caleb Rich, was present but preferred not to testify and that Mr. Rich's testimony would have been consistent with Ms. Sambor's. The prosecutor also explained that although the plea agreement documents stated that the issue of judicial diversion was to be determined by the trial court, Ms. Sambor and Mr. Rich had not agreed to diversion and thought the Defendant was pleading guilty and would receive a conviction. He thought Ms. Sambor had been misinformed by a representative of the district attorney general's office about the terms of the plea agreement.

The prosecutor also stated that the Defendant had a history of juvenile adjudications for truancy, loitering, two instances of disorderly conduct, and resisting arrest. The defense did not contest the accuracy of the prosecutor's statement. Although the record reflects that the trial court was provided with documentation related to the Defendant's juvenile history, no document appears in the record.

Metro Police Detective Jack Stanley testified that he was present in general sessions court for a discussion of lowering the Defendant's bond, although he was unaware of the conditions of the plea agreement. He recalled providing information to one of the prosecutors that the juvenile codefendant was being investigated for other incidents. He said that only the iPod had been recovered and that the Defendant reported he had found it on the ground.

Detective Stanley testified that although the victims had begun cleaning the house before he arrived on the date of the offense, "items [were] strewn everywhere" and dirt was on the floors. He said the Defendant and a juvenile codefendant were identified relative to this case after they were apprehended for a theft of a package outside a home a couple of blocks away. During the detention for the package theft, officers found Mr. Rich's iPod on the Defendant's person. Detective Stanley said a third incident was reported as occurring nearby and within a short period of time of the burglary and the theft. He thought that the collection of fingerprint evidence was attempted but that either no printable surfaces were available or no fingerprints were obtained.

The trial court deferred its ruling until a later hearing, stating that it wanted to review both the Defendant's and the codefendant's juvenile histories. At a subsequent hearing, the defense offered as an exhibit a statement from the Defendant's nurse practitioner regarding his diabetes, his need for regular insulin administration, the danger of developing a life-threatening illness without insulin, and his high blood pressure.

The trial court stated that a period of confinement was appropriate "to protect society from people who commit this type of an offense" and to avoid depreciating the seriousness of the offense. The court noted the invasion and ransacking of the victims' home and the disregard for the victims' feelings. The court sentenced the Defendant to one year's confinement at "CCA," stating the Defendant could participate in a residential drug abuse treatment program, followed by two years' probation. The court said that within the year, it would consider releasing the Defendant to probation after he completed the rehabilitation program. In the information provided for the presentence report, the Defendant stated that he did not use illegal drugs or alcohol. However, the Defendant has not raised an issue regarding the rehabilitation order, and the transcript of the sentencing hearing reflects defense counsel's statement that the sentencing request included drug and alcohol treatment.

On appeal, the Defendant contends that the trial court erred in denying judicial diversion. The State contends that the trial court did not err in denying diversion and that the Defendant was sentenced properly.

A trial court may order judicial diversion for certain qualified defendants who are found guilty of or plead guilty or nolo contendere to a Class C, D, or E felony or a lesser crime; have not previously been convicted of a felony or a Class A misdemeanor; and are not seeking deferral for a sexual offense. *See* T.C.A. § 40-35-313(a)(1)(B)(i) (Supp. 2013) (amended 2014). The grant or denial of judicial diversion is within the discretion of the trial court. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (citing T.C.A. § 40-35-313(a)(1)(A)). When considering whether to grant judicial diversion, a trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the ends of justice. *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see King*, 432 S.W.3d at 326 (stating that recent caselaw affecting the standard of review for sentencing determinations "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion"). "The record must reflect that the court has weighed all of the factors in reaching its determination." *Electroplating*, 990 S.W.2d at 229. If a trial court refuses to grant judicial diversion, "[T]he

court should clearly articulate and place in the record the specific reasons for its determinations." *Parker*, 932 S.W.2d at 958-59.

On review of a decision to grant or deny judicial diversion, this court will apply a presumption of reasonableness if the record reflects that the trial court considered the *Parker* and *Electroplating* factors, specifically identified the relevant factors, and placed on the record the reasons for granting or denying judicial diversion, provided any substantial evidence exists to support the court's decision. *King*, 432 S.W.3d at 327. If, however, the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. *Id.* at 328.

The Defendant contends that the trial court failed to conduct an analysis of the relevant factors, focusing only on the circumstances of the offense and the need for deterrence, and that no presumption of reasonableness should apply. The State counters that the court analyzed the appropriate factors and that in any event, it was not required to specify the reasons it weighed some factors more heavily than others. The record reflects that at the sentencing hearing, the court deferred its decision until a later date, stating that the Defendant was going to "serve some time." The judge also stated that he would consider the Defendant's request for "special probation," noting that although he was not inclined toward that disposition, he would review everything before making a decision.

When the trial court announced its ruling at the subsequent hearing, it noted that the issues were whether the Defendant would receive judicial diversion and the manner of service of the sentence. The court summarized the evidence regarding the crime and its impact on Ms. Sambor and stated that it had considered the Defendant's and his codefendant's "criminal records."[1] The court stated its rationale for imposing split confinement, focusing on the need "to protect society from people who commit this type of an offense" and "to avoid depreciating the seriousness of going into someone's house, ransacking it, just treating people like trash or whatever way you want to put it and not caring anything about how they would feel." The judge stated without elaboration that judicial diversion was not appropriate. Although the judge stated that he would prepare a written order regarding the denial of diversion, the record does not contain an order.

Because the record does not reflect that the trial court considered and weighed the *Electroplating* factors in denying judicial diversion either at the sentencing hearing or in a written order, we will conduct a de novo review without a presumption of reasonableness.

_____

[1] As we have noted, the Defendant was eighteen years old and had a history of juvenile adjudications. His codefendant was a juvenile. We presume the trial court was referring to the Defendant's and the codefendant's juvenile records.

*See id.* at 328. We note the Defendant's young age and history of less serious juvenile adjudications. We are concerned, though, that his four juvenile adjudications each occurred on different dates in 2009, 2011, 2012, and 2013, which shows repeated involvement in the juvenile justice system. Regarding the present offense, Detective Stanley testified that the Defendant was cooperative and respectful. The Defendant reported that he did not use alcohol or drugs other than prescribed medications, although defense counsel stated that the sentencing request included drug abuse treatment. The Defendant had significant health concerns that required ongoing medical care. He was disabled from employment due to his medical conditions, and he had not completed high school or an equivalency examination. He reported excellent mental health.

The information about the Defendant's social history is limited. The presentence report states that his mother and a minor brother lived in Nashville, that he had two adult brothers, and that he was unmarried with no children. The trial court noted on the date it announced the sentence that the Defendant's family members had been present at an earlier hearing.

Regarding the circumstances of the offense, the Defendant was apprehended near the victims' house after a theft of a package from the porch of another residence was reported. The Defendant possessed Mr. Rich's iPod when he was detained but claimed he found it on the ground. The Defendant matched the description of one of the two people seen stealing the package, and he matched a separate description of one of the two people seen looking into another house. He was identified by an eyewitness. The victims' house was ransacked, and dirt and debris were left throughout it. Even though property valued at $4500 to $5000 was stolen, only the iPod was recovered. Ms. Sambor was traumatized by the invasion of her home and was in fear of future burglaries.

We afford significant weight to the circumstances of the offense. We are concerned, as well, by the Defendant's history of multiple juvenile adjudications and the escalation of the severity of the present offense from the level of his juvenile incidents. The present offense is a Class C felony and involved the intrusion into a home. Although the Defendant appears to have family support, it has not deterred him from continuing to commit offenses. We conclude that judicial diversion is not appropriate to deter the Defendant from continuing to commit offenses. In view of the circumstances of the offense, we likewise conclude that judicial diversion would not serve the ends of justice. The trial court did not err in denying judicial diversion.

The judgment of the trial court is affirmed.

_____

ROBERT H. MONTGOMERY, JR., JUDGE